IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 4, 2016
Remanded by the Supreme Court on November 17, 2017

## STATE OF TENNESSEE v. HAROLD ALLEN VAUGHN

**Appeal from the Circuit Court for Madison County
No. 15-231   Donald H. Allen, Judge**

_____

**No. W2016-00131-CCA-R3-CD**

_____

The Defendant, Harold Allen Vaughn, appealed his convictions for attempted first degree murder, aggravated assault, and especially aggravated robbery, contending that the evidence was insufficient to sustain his convictions and that the trial court erred in failing to instruct the jury that his co-defendant was an accomplice as a matter of law.  Upon review, this court affirmed the convictions but remanded the case for entry of a separate judgment form in Count 2 reflecting that the Defendant's aggravated assault conviction was merged with his attempted first degree murder conviction in Count 1.  State v. Harold Allen Vaughn, No. W2016-00131-CCA-R3-CD, 2016 WL 7102748, at *10 (Tenn. Crim. App. Dec. 6, 2016), perm. app. granted and case remanded, No. W2016-00131-SC-R11-CD (Tenn. Nov. 17, 2017) (order).  On November 17, 2017, the Tennessee Supreme Court granted the Defendant's pro se application for permission to appeal and remanded the case to this court for reconsideration in light of the supreme court's opinion in State v. Henderson, 531 S.W.3d 687 (Tenn. 2017).  State v. Harold Allen Vaughn, No. W2016-00131-SC-R11-CD (Tenn. Nov. 17, 2017) (order).  Upon further review, we vacate the Defendant's conviction for especially aggravated robbery, modify this conviction to aggravated robbery, and remand the case to the trial court for a new sentencing hearing and for entry of an amended judgment form in Count 4 reflecting this modified conviction and sentence.  We also remand the case for entry of corrected judgments forms in Counts 1 and 2 as specified in this opinion.  In all other respects, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed in Part;
Reversed in Part; Modified; Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

George M. Googe, District Public Defender; Gregory D. Gookin, Assistant Public Defender, Jackson, Tennessee, for the Defendant-Appellant, Harold Allen Vaughn.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; James G. Woodall, District Attorney General; and Brian M. Gilliam, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION ON REMAND**

This case concerns the robbery and shooting of the victim, Christopher Tompkins. The Defendant, and his co-defendants, James Martin and Bethany Long, was subsequently arrested and charged with attempted first degree murder in Count 1, aggravated assault in Count 2, especially aggravated kidnapping in Count 3, and especially aggravated robbery in Count 4. The Defendant filed a motion to sever his case from his co-defendants' cases, which was granted by the trial court.[1] At trial, the court dismissed the kidnapping charge, and the Defendant was otherwise convicted as charged.

Although our previous opinion contained a detailed recitation of all the facts in this case, in this opinion, we will summarize only the evidence that is relevant to the issue on remand. See Harold Allen Vaughn, 2016 WL 7102748, at *1-4.

Christopher Tompkins, the victim, testified that on November 24, 2014, he traveled by bus from Memphis, Tennessee, to Jackson, Tennessee, to transport a car for his employer. Upon arriving in Jackson, the victim learned that the car at issue was disabled, so he walked to Love's Truck Stop to call his friend for a ride back to Memphis. While he was waiting on his ride, the victim met Bethany Long, an employee at the Hardee's restaurant that was located inside the truck stop. The victim later met Long's boyfriend, the Defendant, and the Defendant's friend, James Martin, when they came into the restaurant to pick up Long after her shift. As the Defendant, Long, and Martin were leaving the restaurant, the Defendant offered to give the victim a ride if his friend failed to pick him up, and they exchanged phone numbers. Later, after his ride failed to appear, the victim called the Defendant and offered to pay him $100 if he would drive him to Memphis, and the Defendant accepted. Around 10:45 p.m., the Defendant and Martin, who were riding in a silver car driven by a female whom the victim had not met, returned to the truck stop. They picked up the victim, and the victim gave the Defendant $40 for gas. Shortly after leaving the truck stop, the female driver claimed she had a family emergency, and she drove the Defendant, Martin, and the victim to the Defendant's car, which was parked at the Lincoln Courts housing complex. After picking up the Defendant's car, the Defendant, Martin, and the victim rode to another gas station where

---

[1] Although the appellate record does not include the trial court's order granting the motion to sever, other orders and proceedings contained within the record indicate that the Defendant's case was severed from his co-defendants' cases.

the victim purchased gas for the Defendant's car and two beers. The Defendant then picked up Long, who had a valid driver's license, so she could drive the Defendant's car to Memphis.

The victim said that shortly after they began driving to Memphis, Long declared that she did not feel well and exited Interstate 40. The Defendant got into the driver's seat and began driving away from the interstate and into a rural area. The victim, who had been tracking the route to Memphis with the GPS on his phone, informed the Defendant he was going the wrong way, which the Defendant denied. The Defendant continued to drive in the wrong direction and suddenly stopped his car in a deserted area and asked the victim to help him with his headlights, which the Defendant claimed were not operating properly. The victim declined and suggested that Martin help the Defendant with his headlights. When Martin exited the car to assist with the headlights, the victim remained in the car and texted his friend the name of the road they were on and told her to call the police because "something is up with this guy." Moments later, the Defendant appeared on the passenger side of the car and pointed a gun in the victim's face.

The victim said the Defendant continued to hold him at gunpoint and directed Martin to search him. The Defendant and Martin searched the victim while he was still seated in the car and then pulled him out of the car and continued to search him, taking the victim's wallet, phone, tablet, and two bags of personal belongings and clothes. At that point, the Defendant put the gun to the victim's temple and told him to lie down on the ground, and the victim told him, "Man, you already got everything, you got the gun, you in control. You already done robbed me." The victim said he did not immediately get on the ground because he believed the Defendant was going to kill him. Instead, the victim "looked up to [his] right where the gun [was], and as [he] did that, [the Defendant] pulled the trigger." The first bullet went through the victim's jaw, ricocheted off his back tooth, and came to rest in his mouth. After the first shot, the victim started running and the Defendant shot him four more times. The second shot grazed his neck, the third and fourth shots entered his upper right arm, and the fifth shot hit him in the back. As the victim ran toward the woods, the Defendant fired one more shot in his direction but missed. The victim stated that the pain from his gunshots wounds "was probably the worst I've felt in my life" and that although he was in shock and bleeding, he was able to walk. After the shooting, the Defendant, Martin, and Long drove away, and the victim walked to a nearby house, where the resident called 9-1-1. The victim asserted that the incident seemed "continuous" to him. However, he admitted that the Defendant shot him "25, 30 seconds" after taking his belongings.

James Martin testified that on November 24, 2014, the Defendant picked him up to hang out. Martin said that while he and the Defendant were waiting on Long, another friend, to finish her shift at Hardees, the victim approached them and offered to pay $100 for a ride to Memphis. Shortly thereafter, Martin and the Defendant took Long home and

-3-

then switched cars and rode with a female friend of the Defendant's back to the truck stop to pick up the victim. Once the victim got in the car, the female friend began "acting nervous," said "she had an emergency or something," and dropped them off at the Defendant's car. Then the Defendant, Martin, and the victim rode in the Defendant's car to pick up Long so she could drive them to Memphis. After Long began driving on the interstate toward Memphis, she said she felt sick and pulled over so the Defendant could drive.

Martin said the Defendant began driving away from the interstate and into a rural area. He then pulled over to check his headlights and told Martin to help him. As Martin and the Defendant were standing outside the car, the Defendant told Martin to "tell the victim to get out of the car and check the headlights." Martin attempted to get the victim to exit the car, but the victim refused. At that point, the Defendant told Martin to "[g]o over there and get [the victim] out of the car[.]" When Martin declined, the Defendant tried to hand him a gun. Martin said that when he refused to take the gun, the Defendant got angry and walked over to the victim, put the gun in his face, and told him, "[D]on't move, or I'll shoot you." Then, the Defendant demanded that Martin search the victim's pockets, and Martin complied because the Defendant had a gun and he "didn't think [he] had a choice." While the victim was still sitting in the car, Martin took the victim's wallet and cell phone and placed them in the back seat.

Martin told the Defendant that the victim did not have anything else and to "let him go," but the Defendant refused to release the victim. At that point, Martin said he "was nervous" and Long, who was sitting in the back seat, "looked scared." Martin heard the Defendant tell the victim "to get out [of] the car" and "to lay [sic] down" and then heard the victim asking the Defendant to "let him go" because "he didn't have nothing." Martin ran around to the driver's side of the car because he "was scared" and heard a gunshot. He confirmed that at the time the first shot was fired, the Defendant had the gun and that he heard "more than two" shots fired during the incident. Martin said he was unable to see what happened during the shooting because he was on the driver's side of the car, and the Defendant and the victim were on the passenger's side. After the shooting, the Defendant got into the front passenger seat of the car, told Martin to get in the car, and ordered Long to get in the front seat so she could drive them away from the scene.

At the conclusion of the aforementioned testimony, the State rested its case-in-chief, and the Defendant moved for judgment of acquittal as to all counts. The trial court granted the Defendant's motion for judgment of acquittal as to the especially aggravated kidnapping charge, finding that there was insufficient evidence to allow the charge to go to the jury, but denied the motion as to all other counts. See State v. White, 362 S.W.3d 559, 578 (Tenn. 2012) (holding that trial courts should require a determination of whether the victim's removal or confinement is incidental to the accompanying felony or is significant enough, standing alone, to support a kidnapping conviction).

The Defendant presented no proof at trial. Following its deliberations, the jury found the Defendant guilty of all three remaining counts.

On direct appeal, this court affirmed the Defendant's convictions but remanded the case for entry of a judgment form in Count 2 reflecting that the Defendant's aggravated assault conviction was merged with his attempted first degree murder conviction in Count 1. Harold Allen Vaughn, 2016 WL 7102748, at *8-10. Thereafter, the Tennessee Supreme Court granted the Defendant's pro se application for permission to appeal and remanded the case to this court for reconsideration in light of Henderson. Harold Allen Vaughn, No. W2016-00131-SC-R11-CD (Tenn. Nov. 17, 2017) (order).

In reconsidering this case, we recognize that the scope of our review is controlled by the Tennessee Supreme Court's remand order. Moreover, our previous conclusions in this case—that the evidence is sufficient to sustain the Defendant's convictions for attempted first degree murder and aggravated assault and that the trial court properly submitted Martin's disputed accomplice status as a factual question to be determined by the jury—are binding on this court.

## ANALYSIS

On remand, we must reconsider the Defendant's case in light of Henderson, 531 S.W.3d at 698, which held that evidence is sufficient to sustain a conviction for especially aggravated robbery when the victim suffers serious bodily injury during the commission of or prior to the completion of the robbery. Therefore, our review on remand is limited to determining whether the evidence is sufficient to sustain the Defendant's conviction for especially aggravated robbery in light of the holding in Henderson. As we will explain, because the Defendant's intended theft was complete at the time that the victim suffered his serious bodily injury, the evidence is insufficient to support the Defendant's conviction for especially aggravated robbery.

Especially aggravated robbery is robbery, as defined in Code section 39-13-401, which is "[a]ccomplished with a deadly weapon" and "[w]here the victim suffers serious bodily injury." T.C.A. § 39-13-403(a) (2014). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Id. § 39-13-401(a) (2014). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Id. § 39-14-103(a) (2014).

In Henderson, 531 S.W.3d at 689, the Tennessee Supreme Court considered whether the victim of an especially aggravated robbery must suffer the serious bodily injury before the accused has completed the robbery. After considering the plain language of the especially aggravated robbery statute, the court concluded that this statute "does not specify at what point in time the serious bodily injury must be suffered by the

victim." Id. at 692. The court applied the basic rules of statutory interpretation and reasoned that the legislature, in drafting the especially aggravated robbery statute, "intended that the underlying robbery offense be considered complete at some discrete point in time." Id. at 693. After considering the construction and interpretation of the especially aggravated kidnapping and especially aggravated burglary statutes that also contain the element "where the victim suffers serious bodily injury," the court concluded that "the victim of an especially aggravated robbery must suffer his or her serious bodily injury during the commission of the underlying theft, i.e., before the accused has completed the theft of property." Id. at 694. However, the Tennessee Supreme Court swiftly recognized that this conclusion "simply posits another question: at what point is the theft underlying a robbery complete?" Id.

After conducting a meticulous evaluation of the Tennessee Supreme Court cases of State v. Owens, 20 S.W.3d 634 (Tenn. 2000), and State v. Swift, 308 S.W.3d 827 (Tenn. 2010), as well as the Tennessee Court of Criminal Appeals cases of Eldridge Hill v. State, No. W2009-01481-CCA-R3-PC, 2010 WL 4027728 (Tenn. Crim. App. Oct. 14, 2010), and State v. Antonio Jamrac Warfield, No. M2011-01235-CCA-R3-CD, 2012 WL 4841546 (Tenn. Crim. App. Oct. 5, 2012), the court identified the specific point in time when a robbery is complete:

> [W]e hold that a robbery accomplished with a deadly weapon is complete once the accused has completed his theft of all the property he intended to steal. If the victim suffers serious bodily injury during the commission of the robbery, the offense may constitute especially aggravated robbery. It is appropriate to consider the accused's conduct and intent when determining whether the underlying theft has been completed.

Henderson, 531 S.W.3d at 698.

The Tennessee Supreme Court then recognized that the uncontroverted proof in Henderson established that the defendant brandished a gun and demanded that the victim give him his wallet, his cellphone, and his keys. Id. Once the victim complied with this demand, the defendant stayed at the scene and began discussing with his cohort what to do with the victim. Id. The court concluded that the defendant's conduct in requesting the victim's keys, remaining at the scene, and demanding that the victim get in the trunk of the car supported an inference that the defendant had not completed his intended theft of the victim's car at the time that the victim began to struggle with the defendant, which resulted in the victim being shot four times. Id. Because the defendant's conduct demonstrated that he had not completed his intended theft at the time that the victim sustained his serious bodily injury, the court held that the victim had, in fact, suffered his serious bodily injury during the commission of the robbery with a deadly weapon and that the evidence was sufficient to sustain the defendant's conviction for especially aggravated robbery. Id.

Applying Henderson to the facts of this case, the uncontested proof at trial established that the Defendant held the victim at gunpoint as he took the victim's belongings and then shot the victim five times. At trial, the victim testified that the Defendant, after taking his property, held the gun to his head and told him to get on the ground. At that point, the victim believed the Defendant was going to kill him and told him, "Man, you already got everything, you got the gun, you in control. You already done robbed me." Although the victim said that the entire incident seemed "continuous" to him, he acknowledged that the Defendant shot him "25, 30 seconds" after taking his belongings.

Similarly, Martin testified that when he told the Defendant that the victim did not have any other property and to let the victim go, the Defendant refused to release the victim. Martin said he heard the Defendant tell the victim "to get out [of] the car" and "to lay [sic] down" and then heard the victim asking the Defendant to "let him go" because "he didn't have nothing." An instant later, Martin heard the first gunshot. Affording the State the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from this evidence, we conclude that the Defendant's conduct in shooting the victim after being advised that he had taken all of the victim's belongings supports the inference that the Defendant had completed his theft of all the property he intended to steal at the time he shot the victim. Because the Defendant's conduct demonstrated that the underlying theft was complete at the time he fired the shots at the victim, we conclude that the victim did not suffer his serious bodily injury during the commission of the robbery with a deadly weapon. Accordingly, the evidence is not sufficient to sustain the Defendant's conviction for especially aggravated robbery.

In light of this conclusion, the proper remedy is to modify the Defendant's especially aggravated robbery conviction to aggravated robbery,[2] which is the first lesser included offense that is supported by the proof presented at trial. Cf. Swift, 308 S.W.3d at 831-32 (vacating the aggravated robbery conviction because the defendant's use of violence and fear did not occur prior to or contemporaneously with his taking of the property and modifying the aggravated robbery conviction to aggravated assault, which was the first offense listed in the jury instructions that was supported by the evidence). Although neither the jury instructions nor the transcript reflecting the trial court's instructions to the jury was included in the record on appeal, the record indicates that for the charge of especially aggravated robbery, the court instructed on the lesser included offenses of aggravated robbery, robbery, and theft of property. Because the evidence is sufficient to sustain a conviction for the lesser included offense of aggravated robbery, we vacate the Defendant's conviction for especially aggravated robbery, modify the

---

[2] As relevant here, aggravated robbery is a robbery, as defined in Code section 39-13-401, that is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" T.C.A. § 39-13-402(a)(1) (2014).

conviction to aggravated robbery, and remand this case to the trial court to conduct a new sentencing hearing on the aggravated robbery conviction and to enter a corrected judgment form in Count 4 reflecting this conviction and sentence.

Lastly, in accordance with our previous opinion in this case, we detect some clerical errors in the judgment forms that require correction. Here, the trial court merged Count 2 with Count 1, and the validity of this merger is not at issue in this case.[3] However, the court entered a single judgment for Counts "1 & 2" that showed a conviction for "Att-First Degree Murder." The judgment form for Counts "1 & 2" includes the following note in the "Special Conditions" section of the judgment: "Counts 1 and 2 merge. Total sentence is 25 years to serve in TDOC. Defendant must pay restitution and court costs, must have no contact with victim." It is well-established that the trial court should have entered a separate judgment form for each count of the indictment. See State v. Berry, 503 S.W.3d 360, 364 (Tenn. 2015) (order for publication summarily granting the application of the defendant under Rule 11 of the Tennessee Rules of Appellate Procedure and reversing a portion of the judgment of the Tennessee Court of Criminal Appeals) ("[W]hen two jury verdicts are merged into a single conviction, the trial court should complete a uniform judgment document for each count."). Therefore, we also remand this case to the trial court for entry of corrected judgment forms for Count 1 and Count 2. On remand, the trial court should impose separate sentences for Count 1 and Count 2 and should place these sentences on each judgment form. Id. Next, the trial court should note in the "Special Conditions" box on Count 2, which is the lesser or merged conviction, that the conviction in Count 2 merges with the conviction in Count 1, which is the greater or surviving conviction. Id. This merger should also be noted in the "Special Conditions" box for Count 1. Id.

## CONCLUSION

Upon reconsideration of this case in light of Henderson, we vacate the Defendant's conviction for especially aggravated robbery, modify this conviction to aggravated robbery, and remand the case to the trial court for a new sentencing hearing and for entry of an amended judgment form in Count 4 reflecting this modified conviction and sentence. We also remand the case for entry of corrected judgments forms in Counts 1 and 2 as specified in this opinion. In all other respects, the judgments of the trial court are affirmed.

---

[3] The State has not raised any issue regarding the propriety of the trial court's merger of the aggravated assault conviction with the attempted first degree murder conviction. Therefore, we will express no opinion regarding the substantive propriety of this merger. Cf. State v. Watkins, 362 S.W.3d 530, 556 (Tenn. 2012) (adopting the Blockburger test for determining whether multiple convictions under different statutes violate double jeopardy); see State v. Berry, 503 S.W.3d 360, 362 n.2 (Tenn. 2015) (order) (expressing no opinion about the substantive propriety of the trial court's merger of two convictions because the State failed to raise the issue).

_____

CAMILLE R. McMULLEN, JUDGE